—1—

1                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF KENTUCKY
2                        LOUISVILLE DIVISION


3

UNITED STATES OF AMERICA,        )    Case No. 3:19-CR-163
4                                )
            Plaintiff,           )
5                                )
        VS.                      )
6                                )
CHRISTOPHER J. CARROLL,          )
7                                )    July 8, 2020
            Defendant.           )    Louisville, KY
8

9                            *  *  *  *  *

10               TRANSCRIPT OF CHANGE OF PLEA
            BEFORE HONORABLE REBECCA GRADY JENNINGS
11               UNITED STATES DISTRICT JUDGE

12                           *  *  *  *  *

13    APPEARANCES:

14    For United States:        Jo Lawless
                                U.S. Attorney's Office
15                              717 West Broadway
                                Louisville, KY 40202
16
      For Defendant:           Brian Butler
17                              Stites & Harbison, PLLC
                                400 W. Market Street, Suite 1800
18                              Louisville, KY 40202

19    [Defendant present.]

20

21                    April R. Dowell, RPR, RMR, CRR
                         Official Court Reporter
22                        232 U.S. Courthouse
                         Louisville, KY 40202
23                          (502) 625-3779

24    Proceedings recorded by mechanical stenography, transcript
      produced by computer.
25

1          (Begin proceedings in open court 1:42 p.m.)

2          THE COURT:  All right.  We are going on the record

3    this afternoon in United States versus Carroll, Criminal

4    Action Number 3:19-CR-163.  Can I have appearances for the

5    record?

6          MS. LAWLESS:  Good afternoon, Your Honor.

7    Jo Lawless on behalf of the United States.

8          THE COURT:  Okay.

9          MR. BUTLER:  Good afternoon, Your Honor.  Brian

10   Butler on behalf of Mr. Carroll.  He's present, ma'am.

11         THE COURT:  Okay.  Good afternoon, Mr. Carroll.  All

12   right.  To start off today, I am going to -- I'm going to make

13   a finding on the record in regards to the Speedy Trial Act.

14   Obviously we've had some delays in this case and many others,

15   but I just want to put it on the record that this case, as

16   with others, was delayed in light of General Order 2020-02 and

17   2020-11 in regards to the risks of Covid that have been

18   outstanding here and the fact that we have not held in-person

19   proceedings.

20         We are back to holding in-person proceedings at this

21   time, but it was simply too risky to do so earlier, and so the

22   court will find that the ends of justice are served by the

23   time that we are going to exclude from the Speedy Trial Act

24   here in light of those general orders.

25         So we'll move forward today, though.  It's my

1   understanding, Mr. Butler, that your client wishes to enter a

2   guilty plea here today in regards to this case; is that

3   correct?

4          MR. BUTLER:  Yes, ma'am; it is.

5          THE COURT:  And that's Count 1 of the indictment?

6          MR. BUTLER:  Yes, ma'am.

7          THE COURT:  All right.  And that will be pursuant to

8   a (c) plea agreement?

9          MR. BUTLER:  Yes, ma'am.

10          THE COURT:  Okay.  All right.  So, Mr. Carroll, I'm

11   going to talk to you a little bit today and you can just stay

12   seated and speak directly into the microphone.  You're here

13   today represented by counsel and that's Mr. Butler, correct?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  And is it your intention to plead guilty

16   here today to Count 1 of the indictment?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Okay.  So before I accept your plea here

19   today, I'm going to need to determine a few things.  I need to

20   determine that you're competent to make your plea, that you

21   understand the charge against you and the potential penalties

22   for that charge, and that there's a factual basis for your

23   plea.  I also need to make sure that you understand all of the

24   rights and the rights that you'll be waiving in order to plead

25   guilty here today.

-4-

```
 1              So to do that I'm going to need to ask you some

 2    questions.  Some of those will be of a personal nature, some

 3    will be about the conduct at issue in the indictment, some

 4    will be about your plea agreement, and then some will be about

 5    the rights that you'll be waiving here today.

 6              If at any point in time you don't understand a

 7    question that I ask you, just ask me to repeat it or rephrase

 8    it and I'm happy to do so.  If you provide an answer to a

 9    question that I ask, I'm going to assume that you understood

10    the question and that your answer is responsive; is that fair?

11              THE DEFENDANT:  Yes, ma'am.

12              THE COURT:  Okay.  All right.  So, Mr. Carroll, the

13    first right you would have to waive here today is your right

14    to remain silent.  Do you understand that you have a

15    constitutional right to remain silent and not incriminate

16    yourself?

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  Do you wish to waive that right in order

19    to answer my questions here today?

20              THE DEFENDANT:  Yes, ma'am.

21              THE COURT:  Okay.  So I'll ask you to raise your

22    right hand.

23              (Defendant sworn.)

24              THE COURT:  Okay.  So you've now sworn an oath to

25    answer my questions truthfully.  Do you understand that your
```

1   answers to my questions will now be subject to penalties of

2   perjury or making a false statement if you fail to answer

3   truthfully?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  Okay.  And to the United States, does

6   this crime have an identifiable victim under 18 U.S.C.

7   3771(e)?

8           MS. LAWLESS:  Yes, Your Honor.  And --

9           THE COURT:  Okay.  Has proper notice been given?

10          MS. LAWLESS:  Yes, ma'am.  And they are here

11  today --

12          THE COURT:  Okay.  All right.

13          MS. LAWLESS:  -- some of them, not all of them, but

14  proper notice has been provided.

15          THE COURT:  Okay.  All right.  Thank you, ma'am.

16  All right.  So, Mr. Carroll, I'm going to ask you some

17  questions.  First, what's your full name?

18          THE DEFENDANT:  I'm Christopher James Carroll.

19          THE COURT:  Okay.  And where were you born,

20  Mr. Carroll?

21          THE DEFENDANT:  Fort Campbell, Tennessee.

22          THE COURT:  Okay.  And are you a citizen of the

23  United States?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  And prior to your arrest, what city and

1       state did you most recently reside?

2               THE DEFENDANT:  Elizabethtown, Kentucky.

3               THE COURT:  Okay.  How old are you?

4               THE DEFENDANT:  21.

5               THE COURT:  All right.  And how far did you go in

6       school?

7               THE DEFENDANT:  Completed high school.

8               THE COURT:  Completed high school?  Do you have any

9       additional education, vocational school, or on-the-job

10      training?

11              THE DEFENDANT:  Some credits in college and

12      certifications with DOCJT.

13              THE COURT:  Okay.  Were you employed prior to your

14      arrest?

15              THE DEFENDANT:  Yes, ma'am.

16              THE COURT:  What type of work were you doing?

17              THE DEFENDANT:  911 dispatcher.

18              THE COURT:  Okay.  All right.  Are you under the

19      influence of any alcohol or drugs here today?

20              THE DEFENDANT:  No, ma'am.

21              THE COURT:  Do you take any type of prescription

22      medications that might make it difficult for you to understand

23      my questions, think clearly, or recall events?

24              THE DEFENDANT:  No, ma'am.

25              THE COURT:  Are there any prescription medications

1    you typically take on a regular basis that you have not taken

2    today for some reason?

3              THE DEFENDANT:  No, ma'am.

4              THE COURT:  Have you ever been treated for addiction

5    to drugs or alcohol?

6              THE DEFENDANT:  No, ma'am.

7              THE COURT:  Have you ever been diagnosed with any

8    mental illness or disorder?

9              THE DEFENDANT:  No, ma'am.

10             THE COURT:  Are you currently suffering from any

11   physical illness or impairment that might make it difficult

12   for you to understand my questions, think clearly, or recall

13   events?

14             THE DEFENDANT:  No, ma'am.

15             THE COURT:  Okay.  And do you generally understand

16   what's happening here in the courtroom today?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  And, Mr. Butler, have you had any

19   problems communicating with your client today or at any other

20   point in time?

21             MR. BUTLER:  No, ma'am.

22             THE COURT:  To the best of your knowledge, has your

23   client understood your legal advice and assisted in the

24   preparation of his defense?

25             MR. BUTLER:  He's been very involved.  Yes, ma'am.

1          THE COURT:  Okay.  And do you believe he understands

2     the charges and that he is competent to plead guilty today?

3          MR. BUTLER:  Yes, ma'am; I do.

4          THE COURT:  Okay.  So based upon your answers,

5     Mr. Carroll, and those of your counsel, I'm going to find that

6     you're competent to plead here today.  And we're going to

7     switch gears a little at this time.  We're going to talk about

8     your constitutional rights.  I need to make sure that you

9     understand those rights and what rights you'll be waiving in

10    order to plead guilty here today.

11         So first we're going to talk about your right to

12    counsel.  Do you understand that you have the right to

13    assistance of counsel at every stage of the proceeding against

14    you and if you cannot afford one, one will be appointed to

15    you?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Okay.  Do you understand that you have

18    the right to plead not guilty and the right to persist in that

19    plea?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Do you understand that you are under no

22    obligation to plead guilty here today unless you wish to do

23    so?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  Next we're going to talk a little bit

1    about your right to a trial by jury.  Do you understand that

2    you have the right to a trial by jury and that a plea of

3    guilty will constitute a waiver of that right?

4            THE DEFENDANT:  Yes, ma'am.

5            THE COURT:  Do you understand that if I accept your

6    guilty plea here today, there'll be no trial of any kind in

7    this matter?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  Do you understand that if there were a

10   trial, you would be presumed innocent and the United States

11   would bear the burden of proving you guilty beyond a

12   reasonable doubt before you could be convicted?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  Do you understand that if you plead

15   guilty you'll no longer be presumed innocent?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  Do you understand that you have the

18   right to a speedy and public trial and that any verdict from

19   that trial would have to be a unanimous decision of a jury

20   composed of 12 individuals?

21           THE DEFENDANT:  Yes, ma'am.

22           THE COURT:  Okay.  Also if there were a trial,

23   Mr. Butler could vigorously represent you, he could examine

24   witnesses on your behalf, he could offer evidence, he could

25   compel the presence of witnesses and generally tell your side

1    of the case to the court and the jury.  By pleading guilty

2    here today, there'll be no opportunity for Mr. Butler to take

3    those actions on your behalf.  Do you understand that?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Do you also understand that if there

6    were a trial, you would have the right to testify if you chose

7    to but that no one could force you to testify at that trial?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Mr. Butler, has your client previously

10   been convicted of a felony?

11             MR. BUTLER:  No, Your Honor.

12             THE COURT:  Okay.  In light of that, do you

13   understand that by pleading guilty to a felony offense here,

14   that such adjudication may deprive you of other valuable civil

15   rights such as the right to vote, the right to hold public

16   office, the right to serve on a jury, and the right to possess

17   any type of firearm?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Okay.  And while I don't believe this

20   applies to you since you've indicated that you're a citizen of

21   the United States, I'm still required to inform you that if

22   you are not a citizen or if you are a naturalized citizen of

23   the United States, in addition to other possible penalties, a

24   guilty plea may subject you to deportation, detention until

25   deportation, exclusion or voluntarily departure, and/or

1    prevent you from obtaining or retaining your United States

2    citizenship.  Do you understand that?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  And, Mr. Butler, I assume you've

5    determined this does not apply to your client, and if so,

6    you -- if it did, you would have discussed it with him?

7              MR. BUTLER:  Yes, ma'am.  It does not apply.

8              THE COURT:  Okay.  And I understand that this is

9    also a sexually-related offense.  And so do you understand

10   that a conviction for a sexual offense will likely result in

11   substantial future restrictions on where you may live or work,

12   with whom you may associate and possible requirements of

13   registration as a sexual offender?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  And, Mr. Butler, I assume you have

16   discussed this with your client as well?

17             MR. BUTLER:  We have discussed this, Your Honor.

18             THE COURT:  Okay.  All right.  So, Mr. Carroll,

19   you've received a copy of the indictment in this matter,

20   correct?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Have you read it all the way through

23   yourself?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Okay.  Have you had a sufficient

1    opportunity to talk to Mr. Butler about it and ask him any

2    questions that you may have?

3              THE DEFENDANT:  I have.

4              THE COURT:  And, Mr. Butler, do you feel you've had

5    a sufficient opportunity to counsel your client in regards to

6    the indictment?

7              MR. BUTLER:  Yes, ma'am.

8              THE COURT:  All right.  So at this point in time I'm

9    going to ask the United States to briefly describe the nature

10   of the charges in the indictment, the potential penalties that

11   may apply, and whether forfeiture or restitution are issues in

12   this case.  Ms. Lawless?

13             MS. LAWLESS:  Yes, Your Honor.  This is a single

14   count substantive charge indictment that charges receipt of

15   child pornography between September 2016 and 2018 here in the

16   Western District of Kentucky in Hardin County and other

17   places.

18             The defendant knowingly received child pornography

19   as that term is defined under federal law that had been mailed

20   or using means of interstate commerce including by computer in

21   violation of federal law.  There is a notice of forfeiture for

22   digital devices.  And any of the images that --

23             THE COURT:  Andrea, can you mute?

24             THE CLERK:  Mine has been muted.  I hear it too.

25             (Discussion off the record.)

1           THE COURT:  I'm sorry.

2           MR. BUTLER:  Can I have a moment just to speak to

3     Ms. Lawless?

4           THE COURT:  Yes.

5           (Discussion off the record.)

6           MR. BUTLER:  Thank you, Judge.

7           THE COURT:  No problem.

8           MS. LAWLESS:  I think I was talking about the notice

9     of forfeiture.

10          THE COURT:  I think you were as well.

11          MS. LAWLESS:  Is this better if I --

12          THE COURT:  You're fine now.  Something about muting

13    and unmuting your mic took care of it.

14          MS. LAWLESS:  I think I was talking about the

15    forfeiture relating to digital devices and the images that he

16    received during this time frame.  There is a mandatory minimum

17    term of imprisonment that's required for a conviction under

18    Count 1.  It's not less than five years.  The maximum

19    potential penalties are 20 years in prison, a $250,000 fine or

20    both, prison and a fine, and then not less than five years and

21    it could be any number of years up to and including life of

22    supervised release.

23          In light of the date involved here, there's also a

24    mandatory $5,000 assessment if at the time of sentencing you

25    determine that Mr. Carroll is not indigent.

1    THE COURT:  All right.  And, Mr. Butler, have the

2    charges and potential penalties been adequately described by

3    Ms. Lawless?

4    MR. BUTLER:  Yes, ma'am.

5    THE COURT:  All right.  So, Mr. Carroll, I need to

6    make sure that you understand the potential penalties for

7    these charges.  Do you understand that under the offense for

8    which you're charged, the court could sentence you to a

9    maximum sentence of 20 years, a total fine of $250,000, impose

10   a term of supervised release up to life, as well as a special

11   assessment of $5,000 and a term -- and an assessment of $100

12   per count in this case?

13   THE DEFENDANT:  Yes, ma'am.

14   THE COURT:  Supervised release means that a United

15   States probation officer will oversee you for a period of time

16   after any term of imprisonment.  During that time you'll be

17   subject to certain rules and conditions while they supervise

18   you.  Do you understand that if you violate any of those terms

19   you might face additional imprisonment?

20   THE DEFENDANT:  Yes, ma'am.

21   THE COURT:  Okay.  Restitution is the return of

22   something that's been taken or stolen to its proper owner or

23   compensation for an injury or loss that may be required.  Do

24   you understand that restitution is mandatory in this case?

25   THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Okay.  And forfeiture is the loss or

2    giving up of a property interest in something as a penalty for

3    wrongdoing.  Do you understand that the court may be asked to

4    order forfeiture to the United States of certain property,

5    here I believe digital devices, do you understand that?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  You'll be asked to give up your property

8    interest in those devices.  Okay.  Mr. Carroll, are you

9    presently on probation or parole from a conviction in any

10   other court at this time?

11         THE DEFENDANT:  No, ma'am.

12         THE COURT:  Okay.  And, Mr. Butler, I assume you've

13   determined that that is correct?

14         MR. BUTLER:  That's correct, Your Honor.

15         THE COURT:  All right.  And, Mr. Butler, are you

16   satisfied that your client understands the nature of the

17   charges, the potential penalties, and the possible term of

18   supervised release that may be required of him?

19         MR. BUTLER:  Yes, ma'am.

20         THE COURT:  All right.  So based on your responses,

21   Mr. Carroll, and those of your counsel, I'm going to find that

22   you've had an appropriate opportunity to review the charges

23   against you in the indictment, that you understand those

24   charges, and what the potential penalties are for those.

25         So I understand there is a written plea agreement in

1   this case, so, Mr. Butler, if you wouldn't mind showing that

2   to him and Ms. Morgan will place those -- place the plea

3   agreement up on the screen so that you can better see it.

4   Mr. Carroll, have you read this document all the way through?

5               THE DEFENDANT:  Yes, ma'am.

6               THE COURT:  Okay.  And do you believe you've had a

7   sufficient amount of time to talk to Mr. Butler about it?

8               THE DEFENDANT:  Yes, ma'am.

9               THE COURT:  Ask him any questions that you may have?

10              THE DEFENDANT:  Yes, ma'am.

11              THE COURT:  Okay.  And do you believe you understand

12  the terms of this plea agreement?

13              THE DEFENDANT:  Yes, ma'am.

14              THE COURT:  Okay.  I'm going to ask Mr. Butler the

15  same question.  Have you discussed this agreement with your

16  client and believe you've had a sufficient amount of time to

17  counsel him?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  All right.  So I'm now going to ask

20  Ms. Lawless to briefly outline the essential terms of the plea

21  agreement.  And we'll have those up on the screen.  And Ms. --

22  if you can refer to the paragraph numbers as you go along.

23  Ms. Morgan will try to put those up on the screen at about the

24  same time so that Mr. Butler can ensure that the agreement

25  that you're going to sign here in open court is the same one

1    that you-all are looking at, okay?  All right.  Ms. Lawless?

2         MS. LAWLESS:  Yes, Your Honor.  As we've talked

3    about earlier, this plea agreement between Mr. Carroll and the

4    United States is under a specific rule of criminal procedure

5    11(c)(1)(C).  It is a binding agreement between the parties.

6    We realize that we cannot bind the court, but we are making a

7    joint recommendation to the court.  And I'm in the prefatory

8    paragraph that's shown on the screen right now.  And the plea

9    agreement later talks about the impact of a (c) plea as well.

10        It's binding on the parties.  We're going to make a

11   recommendation to you.  If you should elect not to accept the

12   plea agreement at a later time, then he will have the right to

13   withdraw his guilty plea and the United States would be

14   relieved of its obligations as well.

15        Paragraph 1 sets out the charges against Mr. Carroll

16   as well as the forfeiture allegation.  Paragraph 2 goes over

17   what you just talked to him about; that he's read the charge

18   against him and that he understands the nature and elements of

19   the crime.  Paragraph 3 sets out the factual basis for the

20   plea agreement.

21        And something that Mr. Butler mentioned to me a

22   moment ago; although the indictment has covered the range of

23   2016 through -- September 2016 through September 2018 as the

24   time frame covered, Mr. Carroll thinks that it was only '17 to

25   '18.  Based on our information, I don't think that that really

1    impacts the elements, but it does talk about the time frame,

2    and so I'm sure Mr. Butler will elaborate on that again here

3    in a few minutes.

4         THE COURT:  And when we get to the factual basis for

5    the plea, we can make any changes necessary.

6         MR. BUTLER:  Yes, ma'am.

7         THE COURT:  Okay.

8         MS. LAWLESS:  Paragraph 4 talks about the maximum

9    potential penalties and any minimum potential penalties that

10   will be required upon conviction as well as, again, the

11   forfeiture allegations.

12        Paragraph 5 goes over the impact on immigration

13   status that the court discussed with Mr. Carroll earlier.

14   Paragraph 6 says that if -- if he receives a sentence of over

15   a year, then he will have to serve a term of supervised

16   release.  And this is a (c) plea for a ten-year term

17   of sentence.  And we also cover -- we'll talk about here in

18   just a minute the recommended term of supervised release in

19   the plea agreement as well.

20        Paragraph 7 sets out that by pleading guilty he's

21   going to give up certain constitutional rights.  You have

22   talked to him about that on the record this morning -- or this

23   afternoon.  Paragraph 8 includes an acknowledgment that the

24   United States Attorneys Office has an obligation to fully

25   apprise both the court and the probation office of all facts

1      that would be pertinent to the sentencing process.

2           And he is, again, admitting all the acts and

3      essential elements of the indictment counts to which he's

4      going to plead guilty.  Paragraph 9 he acknowledges that the

5      crime that he's pleading guilty to is covered by the mandatory

6      restitution provisions we set out in federal law 18 U.S.C.

7      Section 2259.

8           As of right now we do not have any request for

9      restitution, but if we receive any, then they will be shared

10     obviously with the court and with defense counsel and we'll

11     make those appropriate arguments at the time of sentencing.

12     All financial matters will be addressed at the time of

13     sentencing with regard to fines, special assessments,

14     restitution and whatnot.

15          Paragraph 10 sets out the requirement for the

16     special assessment of a hundred dollars for the felony charge

17     to which he's pleading guilty and reiterates that $5,000

18     special penalty assessment that was set out in 18 U.S.C.

19     Section 3014 if you determine that he is not indigent at the

20     time of sentencing.

21          Paragraph 11 says that the parties will at the time

22     of sentencing agree that a ten-year sentence of imprisonment

23     followed by ten years of supervised release is the appropriate

24     disposition for this case.  And at the top of Page 5 it goes

25     on to say that the parties will agree that a fine at the

1    lowest end of the applicable guideline range is appropriate

2    and would be due and payable on the date of sentencing.

3    There's a footnote there, based upon a determination of his

4    ability to pay, and he's acknowledging that he received the

5    penalty page and is aware of potential maximum fines.

6            Paragraph 12 addresses his rights to appeal.  Under

7    federal law he is waiving his right to directly appeal or

8    collaterally attack at a later time any issue other than --

9    with two exceptions.  Those two discreet exceptions are claims

10   of ineffective assistance of counsel or prosecutorial

11   misconduct, otherwise he is waiving all of his appeal rights.

12   And he specifically waives an appeal or collateral attack with

13   regard to the statutes that he's pleading guilty to with

14   regard to their constitutionality and that his conduct falls

15   within the scope of the statute.

16           Paragraph 13.  We entered into this agreement based

17   on his representation that he's making a full and complete

18   disclosure of his assets.  Paragraph 14 he agreed to waive his

19   rights under the Speedy Trial Act with regard to the time

20   between now and sentencing, and that's so you would have the

21   benefit of all relevant information before imposing a

22   sentence.

23           Paragraph 15 he is agreeing not to pursue or

24   initiate any civil claims or suits against the United States

25   of America, its agencies or employees whether they're known to

1    the defendant right now if they're based on the investigation

2    or prosecution of the offense that's covered by this

3    agreement.

4           Paragraph 16 he's waiving his rights whether

5    asserted directly or by a representative to request or receive

6    any Freedom of Information Act information.  He's

7    acknowledging that we provided discovery that's been made

8    available to his -- to his counsel and he's not going to come

9    back at a later time asking for access to file additional

10   information.

11          Paragraph 17 he's agreeing not to interpose an

12   objection to transferring evidence or providing in -- in the

13   indictment concerning this offense to other state or federal

14   agencies.  Sometimes that involve -- involves the IRS.  This

15   is a joint operation, Your Honor, with a federally deputized

16   detective with the Attorney General's Office, so we've already

17   shared information across the state and federal jurisdictional

18   lines because Detective Hedden works with us very closely.

19          Paragraph 18 he's agreeing to forfeit and abandon

20   any right to the evidence that was -- or property that was

21   received -- seized during the investigation including but not

22   limited to any items subject to forfeiture.  There was a state

23   search warrant that was executed and the digital items that

24   are set out in the indictment and also referenced in the plea

25   agreement were seized at that time.

1       Paragraph 19 is something that I mentioned earlier

2   in talking about a (c) plea.  If you do not accept this

3   agreement and impose a sentence in accordance with its

4   recommendation, the agreement becomes null and void and

5   neither party is bound thereto.

6       Mr. Carroll would have the opportunity, if he wanted

7   to, to withdraw his pleas of guilty and we would be -- the

8   United States would be relieved of any obligations or

9   commitments that we had made under this agreement and could

10  pursue any other charges that would be supported by the facts

11  and law.  And if he was convicted of those other charges, we

12  would be free to seek imposition of a different sentence if

13  supported by the facts and law.

14      Paragraph 20 he's agreeing that the disposition in

15  the agreement is fair taking into account all aggravating and

16  mitigating factors.  This has been a negotiation process.  If

17  he asks for something different at the time of sentencing, he

18  would be considered to be in breach of the agreement.  And

19  while he would not be allowed to withdraw his pleas because of

20  that, we could ask the court to relieve us of our obligations.

21      Paragraph 21 points out that this document and the

22  sealed plea supplement that's filed in accordance with local

23  practice and local rule are the only agreements between the

24  parties.  As I mentioned just a moment ago, there is a

25  negotiation process that goes on, but as we stand here today

1    before you, there are no side agreements, no subtle promises

2    or promises of anything that is not set out in this document

3    and the sealed plea supplement.

4           And finally Paragraph 22 is something that you also

5    talked about earlier.  He has been advised and understands

6    that he will be required to register under the Sex Offender

7    Registration and Notification Act.  That's a federal

8    obligation.  It would follow him wherever he lives, works or

9    goes to school and he would be obliged not only to register

10   under any state or territory obligations, but there's a

11   separate and distinct federal obligation as well.

12          THE COURT:  All right.  So, Mr. Butler, have the

13   essential terms of the plea agreement been adequately

14   described by Ms. Lawless?

15          MR. BUTLER:  Yes, ma'am.

16          THE COURT:  Okay.  So, Mr. Carroll, while all of the

17   terms of this plea agreement are very important, I want to

18   point out a few of them to make sure that you understand them.

19          First I want to make sure you understand that as

20   part of this agreement you're waiving certain of your appeal

21   rights.  So as part of this agreement, you're promising not to

22   appeal or collaterally attack at any later point in time

23   anything in this case except on two discreet circumstances:

24   Prosecutorial misconduct, meaning the prosecutor did something

25   wrong, or ineffective assistance of counsel, meaning your

1    counsel did something wrong.  Those are the only two rights

2    you would have to appeal.  Do you understand that you're

3    limiting your appeal rights in this plea agreement?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Okay.  Do you also understand that this

6    plea agreement is something called a (c) plea.  It's a binding

7    plea agreement.  If I accept your plea agreement, you'll be

8    bound by your guilty plea and you'll have no right to withdraw

9    it; however, if I choose not to accept your plea agreement,

10   then you'll be given an opportunity to withdraw your guilty

11   plea and again enter a plea of not guilty.  Do you understand

12   that?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  Okay.  And do you also understand that I

15   will not make a determination on whether to accept or reject

16   your plea agreement until the date of sentencing?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  All right.  And, Mr. Butler, have you

19   discussed this process with your client and believe he

20   understands how it work?

21             MR. BUTLER:  Yes, ma'am.

22             THE COURT:  Okay.  So in accordance with the local

23   rules, all plea agreements contain a sealed supplement, so I'm

24   going to ask that this portion of the transcript be held under

25   seal.  And we'll turn the white noise on.  This is going to be

1    a little different than we usually do.  You-all can plug your

2    headsets into the actual bars there at your seats.  And then

3    we're going to sign all the documents at the end in open

4    court.

5              (Bench conference filed under seal.)

6              THE COURT:  Okay.  So, finally, before we sign these

7    documents, Mr. Carroll, I want to make sure that your plea is

8    being made voluntarily, so I'm going to ask you if anyone's

9    threatened you, threatened anyone close to you, or forced you

10   in any way to plead guilty here today?

11             THE DEFENDANT:  No, ma'am.

12             THE COURT:  Okay.  All right.  Is it your free

13   choice to plead guilty here today?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  Okay.  And have any promises been made

16   to you to cause you to plead other than the representations

17   made by the United States in the plea agreement and its sealed

18   supplement?

19             THE DEFENDANT:  No, ma'am.

20             THE COURT:  All right.  So based upon Mr. Carroll's

21   responses and those of counsel, I'll find that the defendant

22   understands the plea agreement he's entering into and that

23   such plea is being voluntarily made.  So at this point in time

24   I'm going to ask you-all in turn -- we'll start with

25   Ms. Lawless -- to approach the podium and you'll be asked to

1    sign -- this is the plea agreement that we're going to start

2    with.

3           This is a finicky program, so please don't sign

4    anything until you see a box come up.  This is the signature

5    capture box.  Go ahead and sign now.

6           Andrea, are you able -- well, we'll have to do that

7    separately.  Never mind.  All right.  So then, Mr. Carroll, if

8    you'll approach the podium.  And there's hand sanitizer up

9    there as well.  It's kind of hidden by the monitor.

10   Mr. Carroll, you'll need to wait till the box appears.

11          THE COURT:  Okay.  Mr. Butler?

12          THE CLERK:  Okay.  This is for Mr. Butler.

13          THE COURT:  Run and sign before the little box goes

14   away.

15          (Discussion off the record.)

16          THE COURT:  This is it.  This is it, Mr. Carroll, I

17   promise.  Okay.  So what I am going to do just because the

18   courtroom is full is I'll have the sealed supplement signed

19   right after the hearing, okay?  So we'll agree that it's going

20   to be signed in open court.  It's just going to be after the

21   hearing is over so we don't have to clear the courtroom right

22   now, okay?

23          MR. BUTLER:  Yes, ma'am.

24          MS. LAWLESS:  Yes, ma'am.

25          THE COURT:  All right.  So, Mr. Carroll, thank you

1    for your patience on that.  Thank everyone for their patience.

2    Technical difficulties seem to be our specialty here today.

3           All right.  So with this having been signed, we will

4    proceed with the change of plea.  I'll defer a decision on --

5    until the sentencing as to acceptance or rejection of the plea

6    agreement.  And we'll add in, the plea agreement will be

7    entered into the record as proposed.

8           So now, Mr. Carroll, I just want to talk to you for

9    a moment about some of the factors that will be taken into

10   account in your sentencing.  While the sentencing guidelines

11   are no longer binding on the court, they are still a starting

12   point for consideration of your sentence, so it's important

13   that you generally understand how the sentencing guidelines

14   work and they're based upon two primary factors:  The offense

15   level for the crime that you've been charged with put up

16   against your personal criminal history.  Those two factors are

17   put together to determine the guideline range which the court

18   considers in your sentencing.

19          I find out about all of those factors from the

20   Presentence Investigation Report that will be prepared by a

21   United States probation officer prior to your sentencing.  Do

22   you understand that until that Presentence Investigation

23   Report is prepared it's impossible to know exactly what your

24   sentencing guideline range may be?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Okay.  I also consider any maximum and

2     minimum sentences set by Congress as well as the sentencing

3     factors which include the nature and circumstances of the

4     offense, your personal criminal history, your characteristics

5     as an individual and your background, the need for the

6     sentence imposed to reflect the seriousness of the offense,

7     promote respect for the law, provide adequate punishment and

8     protect the public from further crimes.

9          Mr. Carroll, have you talked to Mr. Butler about the

10    various factors that will be considered in your sentencing and

11    believe you understand them?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Okay.  And do you also understand that

14    parole has been abolished in the federal system, so if you are

15    sentenced to a term of imprisonment, you'll not be released on

16    parole?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  Okay.  And, Mr. Butler, are you

19    satisfied that your client understands the role of the

20    Sentencing Commission Guidelines and the relevant statutes in

21    determining his sentence?

22         MR. BUTLER:  Yes, ma'am.

23         THE COURT:  Okay.  So, Mr. Carroll, we've now walked

24    through the rights that you're waiving in order to plead

25    guilty, we've talked about the potential penalties to the

1      counts you're pleading guilty to and we've walked through some

2      of the factors that are considered in your sentencing.  So

3      having talked about all of those things, do you still wish to

4      proceed with your plea today?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Okay.  So I'm now going to ask

7      Ms. Lawless to summarize the evidence that the United States

8      would have produced at trial.  And I'm going to ask you,

9      Mr. Carroll, to listen carefully to what she has to say

10     because you're going to need to confirm that you in fact did

11     all of the things that she is alleging.  Ms. Lawless?

12             MS. LAWLESS:  Yes, Your Honor.  We would be prepared

13     to prove that between September of 2016 and September of 2018

14     while in Hardin County and other places that Mr. Carroll

15     knowingly sought and received child pornography.  He did so

16     while using social media applications associated with the

17     internet.

18             He used a cellular phone, iPad, and other digital

19     devices to communicate with individuals for the purpose of

20     obtaining the images of child pornography.  And the materials

21     he received depicted minors -- that is individuals under the

22     age of 18 -- engaged in sexually explicit conduct as defined

23     under federal law.  That in a nutshell is what we would be

24     prepared to prove.

25             THE COURT:  Okay.  So, Mr. Carroll, you've heard

1   Ms. Lawless' statements of the facts.  Are all of these facts

2   correct?

3           MR. BUTLER:  Judge, in talking to Chris, the only

4   issue may be the dates -- the beginning date.  He seems to

5   believe it was closer to September 2017 than September 2016.

6   Otherwise he's prepared to admit those facts.  And I don't

7   believe that has any impact on the factual basis.

8           THE COURT:  I don't think it has any impact on the

9   factual basis itself.  If you want to change it, we can edit

10  it in the PDF and you can look at it after the hearing and we

11  can just change that date if that makes you-all more

12  comfortable, but that's up to you-all.

13          MR. BUTLER:  Judge, I'm comfortable with him

14  admitting with the edited 2017 date just so -- he's saying

15  what he believes happened.  And obviously the government may

16  have a different date beforehand.  He's kind of going from

17  memory, but he's brought this to my attention before, so --

18          THE COURT:  Okay.  All right.  So understanding that

19  you're speaking about dates between 2017 and 2018, are all the

20  facts that Ms. Lawless described correct with that one

21  exception?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Okay.  And have you read Paragraph 3 of

24  your plea agreement in detail and are all the facts set forth

25  therein absolutely correct and true?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Okay.  Are you pleading guilty here

3    today because you in fact did all of these things?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  All right.  Did you knowingly receive

6    child pornography?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Did you use means of interstate

9    commerce, meaning the computer or the internet, to receive

10   those?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  Okay.  And we'll make the record reflect

13   that it's 2017 to September of 2018.  So is it your intent to

14   enter a guilty plea here today to Count 1 because you are in

15   fact guilty?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  I'll find that there's a factual basis

18   for Mr. Carroll's plea of guilty.  And so, Mr. Carroll, I'll

19   ask you to tell the court how you plead with respect to each

20   of the counts against you.  In the case of United States

21   versus Carroll, Criminal Action 3:19-CR-163, how do you plead

22   to Count 1 of the indictment?

23         THE DEFENDANT:  Guilty, Your Honor.

24         THE COURT:  All right.  Having observed your

25   demeanor here today as well as the statements and responses

1    that you and your counsel have made, I'll make the following

2    findings on the record.

3         It's the finding of this court that the defendant is

4    fully competent and capable of entering an informed plea here

5    today.  His plea of guilty is knowing and voluntarily made and

6    is supported by an independent basis and fact containing the

7    essential elements of the offenses charged.

8         His plea of guilty is accepted by the court and the

9    defendant will be adjudged guilty of the offenses charged in

10   Count 1 of the indictment.  The plea will be entered into the

11   record and the plea agreement and its sealed supplement will

12   be entered into the record as proposed until the time of

13   sentencing.

14        Before we address a date for sentencing, are there

15   any other issues that I have failed to cover here this

16   afternoon?

17        MS. LAWLESS:  No, Your Honor.  You asked me at the

18   very beginning of the hearing whether there were identifiable

19   victims under 3771 and I acknowledged that there were.  Under

20   the Crime Victims Rights Act, they do have the right to

21   address the court including at the time of a change of plea.

22        I've talked to them and I am representing their

23   interest today.  It may very well be that there will be

24   comments offered by them at the sentencing hearing and

25   certainly we have received victim impact statements, but for

1   purposes of today's hearing we've met our obligations and I

2   just wanted to make that absolutely clear on the record.

3          THE COURT:  Okay.  And I assumed just them being

4   here was evidence of the notice and I certainly appreciate

5   that and obviously that is their right at the time of

6   sentencing to make a statement, and so we'll understand that

7   there are at least victim impact statements coming if not

8   comments on the day of sentencing, and so we'll make sure

9   Andrea maybe takes that into account in setting the time for

10  sentencing and the amount of time that may take.

11         MS. LAWLESS:  Yes, ma'am.

12         THE COURT:  Okay.  So a date for -- I'm sorry.

13  Mr. Butler, have I missed anything today?

14         MR. BUTLER:  No, Your Honor.

15         THE COURT:  Okay.  Ms. Morgan, can you provide a

16  date for sentencing?

17         THE CLERK:  Yes, Your Honor.  What about October 7th

18  at 2:45?

19         MR. BUTLER:  That's great for me.

20         THE COURT:  Okay.  Ms. Lawless?

21         MS. LAWLESS:  Yes, ma'am.  That will work for us as

22  well.

23         THE COURT:  Okay.  And obviously that date --

24  everybody's heard that date, so anybody who does want to

25  appear at that time, you're absolutely welcome to, both

1    family, I'm sure.

2            Okay.  So, Mr. Carroll, between now and that October

3    7th date a United States probation officer is going to come

4    meet with you to prepare the Presentence Investigation Report

5    that I talked to you about earlier.  Do you remember that?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  Okay.  So they're going to ask you

8    questions and ask for information to prepare that report.  You

9    can choose whether or not to have counsel present when that

10   takes place and you can talk to Mr. Butler about that.

11           After that report is prepared, you will have an

12   opportunity with Mr. Butler to go through it and make any

13   objections that you have or make any corrections that you feel

14   are necessary to that report before the date of sentencing.

15           And then on the date of sentencing, you'll have the

16   opportunity if you choose to do so to speak directly to the

17   court.  I like you to know that that's completely voluntary,

18   but it's an option available to you.  Some people like to be

19   prepared for it, some people don't want to talk at all, but I

20   just want you to know that that opportunity is available to

21   you in the same way it's available to other members of this

22   case.

23           All right.  So it's my understanding Mr. Carroll is

24   in custody and he will remain so and be -- be remanded to the

25   custody of the United States Marshals until the date of

1 sentencing.  Are there any other issues we need to address

2 today?

3           MS. LAWLESS:  No, Your Honor.

4           MR. BUTLER:  No, ma'am.

5           THE COURT:  Okay.  Thank you-all very much.

6           THE CLERK:  Judge, we need the sealed supplement

7 signed.

8           THE COURT:  Okay.  So what I'm going to ask is if

9 everybody in the audience can leave the room.  Unfortunately

10 it's hard for us to get these signature blocks up here any

11 other way.  So we'll ask everybody to leave and then if

12 counsel and the defendant can stay in order to sign those in

13 open court.  You can place that up on the screen.  And let's

14 start with Ms. Lawless.

15           (Discussion off the record.)

16           THE COURT:  And, Mr. Carroll, if you can approach

17 the podium.  All right.  You can go ahead and sign.

18 Mr. Butler?  Okay.  Thank you-all for your patience.

19 (Proceedings concluded at 2:30 p.m.)

20                   C E R T I F I C A T E

21     I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

22 THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

23

24
          s/April R. Dowell              4/18/22
25 Official Court Reporter, RMR, CRR         Date